**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **P. B.** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  3:25-CV-02978-O** |
| | § | |
| **THOMAS BERGAMI, Warden,** | § | |
| **Prairieland Detention Center; JOSHUA** | § | |
| **JOHNSON, Field Office Director, Dallas** | § | |
| **Field Office, U.S. Immigration and** | § | |
| **Customs Enforcement; KRISTI NOEM,** | § | |
| **Secretary of the U.S. Department of** | § | |
| **Homeland Security; PAMELA BONDI,** | § | |
| **Attorney General of the United States, in** | § | |
| **their official capacities** | § | |
| | § | |
| **Respondents.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner's Petition for Writ of Habeas Corpus and Motion to Show Cause (ECF No. 1), Motion for Temporary Restraining Order (ECF No. 2) and Brief in Support (ECF No. 3), and Motion to Proceed Under Initials (ECF No. 4); Respondents' Response in Opposition to Petitioner's Writ of Habeas Corpus and Motion for Temporary Restraining Order (ECF No. 11); and Petitioner's Reply (ECF No. 13). The Court also held a hearing on December 1, 2025, at which counsel for both Petitioner and Respondents ("the Government") were present. After considering the briefing, counsels' oral arguments, and relevant case law, the Court determines that Petitioner's Petition for Writ of Habeas Corpus is **DENIED**. And because the Court finds that Petitioner cannot succeed on her remaining claims, Petitioner's Motion for a Temporary Restraining Order is **DENIED**. Petitioner's Motion to Proceed Under Initials is **GRANTED**.

## I.  BACKGROUND

Petitioner, an alien from Colombia, brings this action challenging her current detention by Immigration and Customs Enforcement ("ICE").[1] Petitioner was initially encountered and detained by Border Patrol agents on November 15, 2024, after illegally entering the United States.[2] Once Border Patrol began processing her for expedited removal under the Immigration and Nationality Act ("INA") § 235(b)(1), 8 U.S.C. § 1225(b)(1),  Petitioner claimed a fear of returning to Colombia.[3] An asylum officer conducted a credible fear interview and determined Petitioner demonstrated a credible fear of returning to Colombia.[4] The asylum officer vacated removal proceedings under 8 U.S.C. § 1225(b)(1) pursuant to 8 C.F.R. § 208.30(f).[5] This effectively placed Petitioner in removal proceedings under INA § 240, 8 U.S.C. 1229a.[6] In January 2025, Petitioner was released from Department of Homeland Security ("DHS") custody pursuant to its discretionary parole authority under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A).[7] Petitioner requested and was granted a change of venue to Dallas, Texas for her immigration proceedings.[8] On October 14, 2025, Petitioner reported to a Dallas ICE office where her discretionary parole was terminated, and she was taken into ICE custody.[9] She is currently being held at the Prairieland Detention Center in Alvarado, Texas pending a hearing on her asylum application before an immigration judge scheduled for January 20, 2026.[10] Petitioner is a Type 1 diabetic who claims she is not receiving adequate medical care or proper nutrition based on her diabetic status while detained.[11] She alleges she is not receiving adequate amounts of drinking water and due to extreme thirst, a symptom of her Type-1 diabetes, has resorted to drinking her own urine.[12]

Petitioner filed a Petition for Writ of Habeas Corpus alleging violations of (1) the INA, (2) the Due Process Clause of the Fifth Amendment, (3) the Administrative Procedures Act, 5

---

[1] Pet. 6, ECF No. 1.
[2] Resp. 1, ECF No. 11

U.S.C. § 553(c), and (4) the Rehabilitation Act, 29 U.S.C. § 794, and seeks a Temporary Restraining Order.[13] The Government was ordered to respond (ECF No. 9) and complied. And Petitioner filed a reply. Petitioner's Motions are now ripe for the Court's review.

## II.    Legal Standard

### A.    Temporary Restraining Order

Rule 65 of the Federal Rules of Civil Procedure governs injunctions and restraining orders. A temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified). A court may issue a Temporary Restraining Order if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in its favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). As the movant, it is the party seeking relief who bears the burden of proving all four elements of the requested injunctive relief. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). Temporary restraining orders are "extraordinary relief and rarely issued." *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532

---

[3] *Id.* at 2.
[4] Pet. 7, ECF No. 1.
[5] *Id.*
[6] Resp. 2, ECF No. 11.
[7] *Id.*
[8] Pet. 7, ECF No. 1.
[9] *Id.*; Resp. 2, ECF No. 11.
[10] Pet. 7, ECF No. 1.
[11] *Id.* at 8.
[12] *Id.*
[13] Pet. 21, ECF No. 1.

(E.D. La. 1999). The decision to grant or deny injunctive relief is committed to a district court's discretion. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

### B. Writ of Habeas Corpus

A person held "in custody in violation of the Constitution or laws or treaties of the United States" can seek relief under a writ of habeas corpus. 28 U.S.C. § 2241(c)(3). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Habeas exists only "to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).

### III. Analysis

### A. Jurisdiction

Because the Court has general habeas jurisdiction over persons detained in the United States, including aliens, it has jurisdiction to hear the Petition as an initial matter. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Government contends that 8 U.S.C. § 1252(g) and (b)(9) strip the Court of jurisdiction to review Petitioner's claims.[14] Petitioner responds that § 1252(b)(9) only strips the Court of jurisdiction for an action "brought to remove an alien from the United States" and § 1252(g) only bars the Court from reviewing the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders."[15] Petitioner claims she is being illegally held under 8 U.S.C. § 1225 or § 1226, among other claims, and seeks release under habeas.[16] Because the Court finds that Petitioner is not entitled to habeas relief under the facts

---

[14] Resp. 21–24, ECF No. 11.
[15] Reply 3, ECF No. 13.
[16] Pet. 10–13, ECF No. 1.

presented, the Court need not determine the applicability of the jurisdictional stripping statutes cited by the Government.

## B. Applicability of § 1225(b)(2)(A) and § 1226(a)

Petitioner seeks habeas release from detention based on unlawful confinement, or in the alternative, for the Court to require a bond hearing.[17] Petitioner asserts that because she resided in the country for 11 months before her current detention, she was not "seeking admission" into the United States, and thus cannot be properly detained under § 1225(b)(2)(A).[18] Accordingly, she argues, her current detention must be pursuant to § 1226.[19] And because DHS did not conduct an individualized assessment as required by § 1226, she insists she is being unlawfully held or is at least entitled to a bond hearing before an immigration judge.[20] The Government disagrees and asserts that "Petitioner is lawfully detained on a mandatory basis as an alien present in the United States without inspection or parole" under 8 U.S.C. 1225(b)(2)(A).[21]

"As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). When the statutory language is clear, it must be enforced according to its plain meaning. *Id*. Relevant here is the statutory text of § 1225(b)(2)(A) and § 1226(a).

Section 1225 governs the inspection, detention, and removal of aliens seeking admission into the United States. The statute provides that, "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). The Supreme Court has concluded this

---

[17] Pet. 3–4, ECF No. 1.
[18] Pet. 12–13, ECF No. 1.
[19] *Id.*
[20] *Id.*
[21] Resp. 1, ECF No. 11.

section defines an applicant for admission as, "an alien who arrives in the United States, *or* is present in this country but has not been admitted." *Jennings v. Rodriguez*, 583 U.S. 281, 287, (2018) (quotation omitted) (emphasis added).

Section 1225(b)(2)(A) requires, "in the case of an alien *who is an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, *the alien shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The parties agree that § 1225(b)(2)(A), if it applies, requires mandatory detention.[22]

Petitioner asserts that 8 U.S.C. § 1225(b)(2)(A) only applies to aliens "at the threshold of initial entry" because § 1225(b)(2)(A)'s use of "seeking admission" "requires some sort of present tense action."[23] And an alien "who has already entered the country (albeit unlawfully) cannot continue to be actively seeking lawful entry."[24] Thus, she argues, she could not have been seeking admission when she was recently detained.[25] She contends she should be classified as an "alien already in the country pending the outcome of removal proceedings" and receive a bond hearing under § 1226(a).[26]

Section 1226 allows for discretionary detention.[27] "On a warrant issued by the Attorney General, *an alien may be arrested and detained* pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The alien may be released either on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(2)(A)-(B). If an alien is released under this section, the Attorney General may revoke that bond or parole. 8 U.S.C. 1226(b).

---

[22] Pet. 1, ECF No. 1; Response 1, ECF No. 11.
[23] Pet. 10, 12, ECF No. 1.
[24] Pet. 12, ECF No. 1.
[25] *Id.*
[26] Pet. 12, ECF No. 1.
[27] The parties agree. Pet. 11, ECF No. 1; Response 5, ECF No. 11.

Petitioner's arguments fail. First, the Government relies only on §1225(b)(2)(A) and does not rely on § 1226. Therefore, either Petitioner is properly detained under §1225(b)(2)(A) or she should be released. Next, Petitioner's attempts to distinguish "applicant for admission" and an alien "seeking admission" misrepresents Petitioner's intentions and attempts to turn the plain meaning of § 1225(b)(2)(A) on its head.

   I. <u>Petitioner is an applicant for admission.</u>

To start, it is undisputed that Petitioner clearly meets the statutory definition of an applicant for admission. Petitioner does not hide that she is present in the country illegally and does not contend that she has been admitted.[28] Thus, Petitioner is plainly an applicant for admission under 8 U.S.C. § 1225(a)(1)—an "alien present in the United States who has not been admitted."

   II. <u>Petitioner is seeking admission.</u>

The Court turns next to the text of § 1225(b)(2)(A) to determine if she is seeking admission. "Introductory clauses are dependent clauses that provide background information or "set the stage" for the main part of the sentence."[29] Section 1225(b)(2)(A) directs an immigration officer to detain an alien who is not entitled to be admitted but is an *applicant for admission* who is *seeking admission*. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).[30] The plain reading of the text shows that "in the case of an alien who is an *applicant for admission*," is an introductory clause "setting the stage" for the main part of the sentence providing that an alien not entitled to be admitted who is

---

[28] For Petitioner to be admitted requires "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101 (13)(A).

[29] Purdue University, *Commas After Introductions*, ONLINE WRITING LAB, https://owl.purdue.edu/owl/general_writing/punctuation/commas/commas_after_introductions.html (last visited Dec. 5, 2025).

[30] While Congress has defined applicant for admission, it has not defined "seeking admission." Therefore, the Court applies its common and ordinary meaning. *See Sebelius v. Cloer*, 569 U.S. 369, 376 (2013).

"seeking admission" shall be detained. Thus, an unadmitted alien present in the country—the statutory definition of applicant for admission—who also seeks to be admitted, shall be detained.

Petitioner disputes she is "seeking admission." Instead, she asserts she is "an alien already in the country pending the outcome of removal proceedings." But the facts in this case say otherwise. Petitioner awaits her asylum hearing where she seeks a ruling admitting her into the United States. As an applicant for admission seeking legal admission into the country, it cannot be seriously disputed that she is not actively seeking admission.

The plain language of § 1225(b)(2)(A) supports this conclusion. Start with the common meaning of "applicant." Merriam-Webster defines applicant as "one who applies."[31] Likewise, Black's Law Dictionary defines "applicant" as "[s]omeone who requests something; a petitioner, such as a person who applies for letters of administration." *Applicant*, BLACK'S LAW DICTIONARY (12th ed. 2024). In other words, an "applicant" is someone actively applying who "requests" or "seeks" something. Next, the common meaning of "seeking." Black's Law Dictionary does not define seeking, but Merriam-Webster defines it as "to go in search of: look for"; "to ask for"; "to try to acquire."[32] The logical connection then is an "applicant for admission," i.e. someone present in the country illegally, who is trying to acquire legal status, is clearly an alien "seeking admission." For Petitioner to be an "applicant for admission" but not "seeking admission" does not logically make sense based on the facts of this case. She certainly currently requests and seeks legal admission to this country. And because Petitioner is clearly an "applicant for admission," is "seeking admission," and is not entitled to be admitted, § 1225(b)(2)(A) applies. As one court who recently confronted the same issue remarked, "[t]here is no material disjunction—by the terms of

---

[31] *Applicant*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/applicant (last visited Dec. 12, 2025).
[32] *Seeking*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/seeking (last visited Dec. 12, 2025).

the statute or the English language—between the concept of 'applying' for something and 'seeking' something.'" *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, 2025 WL 3264478, at *4 (N.D. Tex. Oct. 24, 2025) (Hendrix, J.).

Petitioner's argument that § 1225(b)(2)(A) only applies "at the threshold of initial entry" is likewise not supported by the text. Had Congress intended to limit § 1225(b)(2)(A) to aliens "at the threshold of initial entry," it could have said so. Other subsections of § 1225 use the term "arriving" to apparently indicate an initial entry. *See* § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is *arriving* in the United States") (emphasis added); *see also* § 1225(c) ("In the case of an alien described . . . who is *arriving* on land") (emphasis added); 1225(a)(2) ("An *arriving* alien who is a stowaway is not eligible to apply for admission or to be admitted") (emphasis added). But § 1225(b)(2)(A) does not use "arriving," signaling that it applies beyond the threshold of entry.[33]

To support her disjunctive reading of § 1225(b)(2)(A), Petitioner relies primarily on *Lopez-Arevelo v. Ripa*[34] and *Jennings v. Rodriguez*.[35] But neither support her interpretation. *Lopez-Arevelo* was not a statutory interpretation case. *See Lopez-Arevelo*, 2025 WL 2691828, at *7. The court there explicitly disclaimed considering "whether [ICE's] new mandatory detention policies reflect a proper reading of [§ 1225(b)(2)(A)]." *Id.*

Neither does *Jennings* support Petitioner's argument that she should be classified as "an alien already in the country pending the outcome of removal proceedings" instead of an "alien seeking admission." *Jennings* explicitly states that an alien who is present in this country but *has not been admitted* is treated as an applicant for admission. *Id.* The detainee in *Jennings* held under

---

[33] Further, there is nothing in the text that limits § 1225(b)(2)(A) to an initial detention.
[34] No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025).
[35] 583 U.S. 281 (2018).

§ 1226 was a lawful permanent resident—in other words, an alien admitted to the United States. *See id. at* 297; *see also Vartelas v. Holder*, 566 U.S. 257, 261 (2012) (explaining that lawful permanent residents are "aliens lawfully residing [in the United States]"). *Jennings* does not read § 1225(b) to limit the statute to aliens "at the threshold of initial entry." But rather the Supreme Court distinguished § 1225(b) and §§ 1226(a) and (c) by explaining that § 1225(b) applies only to aliens seeking admission and §§ 1226(a) and (c) applies to "aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission"—i.e. an alien already in the country. *Jennings*, 583 U.S. at 288. That § 1226(a) might have some overlap with § 1225(b) and provide the Government with two avenues for detaining aliens who are not admitted into the country does not limit § 1225(b). And just because Petitioner could fall under § 1226(a), does not mean she is not also subject to § 1225(b)(2)(A). Petitioner has not been admitted into the United States, is not entitled to be, and therefore is subject to detention under § 1225(b)(2)(A) while seeking admission to this country. Even if § 1226(a) were available to the Government, it has chosen to detain her under § 1225(b)(2)(A).

The Court's conclusion that Petitioner is lawfully detained under § 1225(b)(2)(A) as an alien properly characterized as an "applicant for admission" who is also "seeking admission" is supported by recent decisions from Judge Charles Eskridge in *Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025), Judge David Joseph in *Sandoval v. Acuna*, No. 6:25-CV-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025), and Judge James Wesley Hendrix in *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, 2025 WL 3264478 (N.D. Tex. Oct. 24, 2025). All three judges undertake a thorough statutory analysis of § 1225 and arrive at nearly identical conclusions as this Court. To be sure, there are several courts who have reached opposite decisions. *See Cabanas*, 2025 WL 3171331, *5 (collecting cases). But as Judge Eskridge aptly

noted, "[u]ntil such time as the Fifth Circuit takes up this issue and gives an authoritative construction, it remains incumbent upon district courts to each make their own, independent assessment." *Id.*

Accordingly, the plain language of § 1225(b)(2)(A) supports the Government's position that Petitioner is rightfully detained. Petitioner's request for Writ of Habeas Corpus on this ground is **DENIED**.[36]

### C. Due Process

#### I.    Denial of Notice

Petitioner asserts that that her re-detention under 8 U.S.C. § 1225(b)(2) without notice, following her initial release on parole, violates the Due Process Clause of the Fifth Amendment.[37] The Government responds that Petitioner's claim is not properly before the Court because Petitioner has not exhausted her administrative remedies by seeking a custody redetermination with the immigration court.[38] The Court agrees with the Government.

It is clearly established that a "person seeking habeas relief must first exhaust available administrative remedies." *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018). "But any exhaustion requirement is prudential," when, as the parties here agree, no statutory requirement exists. *Cabanas*, 2025 WL 3171331, at *3. Where "Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The Court should require exhaustion, when appropriate, "because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145. "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are

---

[36] Because § 1225 does not require or provide for a bond hearing, the Court declines to order one.
[37] Pet. 13–15, ECF No. 1.
[38] Resp. 8–9, ECF No. 11.

unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). But these exceptions apply only in "extraordinary circumstances" and upon "demonstrating the futility of administrative review." *Id.*

Petitioner represents she was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) and claims her re-detention while on parole does not comport with 8 C.F.R. § 212.5(e)(2)(i) because she was not given the requisite notice required under the regulation, and thus, deprived of due process.[39] The Government responds that while Petitioner did receive due process, she has not exhausted her administrative remedies on this claim because she "can still request [] a custody redetermination with the Immigration Court, and if unsatisfied with that determination, appeal with the [Board of Immigration Appeals]."[40] Petitioner replies that exhaustion would be futile citing the Board of Immigration Appeals' ("BIA") recent decision in *Matter of Hurtado*, 29 I&N Decision 216 (BIA 2025) and *Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950096 (S.D. Tex. Oct. 3, 2025) for the proposition that appeals with the BIA take more than six months.[41]

Petitioner's attempts to show that exhaustion would be futile are unpersuasive. First, while Petitioner correctly recites *Hurtado's* holding that the BIA has no authority over bond requests under 8 U.S.C. § 1225(b)(2)(A), *Hurtado* does not appear to prohibit complaints that her detention violated 8 C.F.R. § 212.5(e)(2)(i). Second, even if the BIA is unable to hear Petitioner's appeal for several months, she is still required to file an appeal and attempt to exhaust her administrative remedies before seeking habeas relief. *See Fuller*, 11 F.3d at 62  ("We require [the petitioner] to take this further step because until he actually appeals and that appeal is acted on, we do not know

---

[39] Pet. 13–15, ECF No. 1.
[40] Resp. 8, ECF No. 11.
[41] Reply 4, ECF No. 13.

what the appeals board will do with [the petitioner's] claim, and until the appeals board has been given an opportunity to act, [the petitioner] has not exhausted his administrative remedies."). Petitioner provides no evidence to the Court that she has petitioned the immigration court to adjudicate her alleged failure to provide notice of parole revocation, for a custody redetermination, or sought an appeal with the BIA on these issues. Accordingly, the Court holds that Petitioner has not exhausted her administrative remedies.

## II.    Conditions of Confinement Claims

Petitioner asserts additional Due Process claims. She alleges her Due Process rights are violated because she is subject to unconstitutional conditions of confinement and § 504 of the Rehabilitation Act violations, 29 U.S.C. § 794.[42] These claims are properly viewed as claims relating to her conditions of confinement. *See Francois v. Garcia*, 509 F. Supp. 3d 668, 672 (S.D. Tex. 2020).

Petitioner claims she is "subject to conditions of confinement that expose her to the serious risks associated with untreated Type 1 diabetes."[43] She asserts that the Government's failure to provide proper medical treatment for her Type 1 diabetes, "including access to adequate insulin, a diabetic-friendly diet, and adequate water," subjects her to unconstitutional conditions of confinement.[44]

Petitioner also alleges that the Government is violating the Rehabilitation Act by failing to make "reasonable modifications to its detention policy so as to avoid discrimination against her on

---

[42] Pet. 4, 22, ECF No. 1.

[43] *Id.* at 16.

[44] *Id.* at 17. Petitioner also raised a conditions of confinement claim regarding overcrowding because she was allegedly forced to sleep on a plastic mat on the floor and not given access to a proper bed and mattress. *See* Pet. 17, ECF No. 1. At the Hearing, Petitioner's counsel informed the Court that this claim had been remedied and that Petitioner now has access to a bed and mattress. Accordingly, the Court finds that this claim is moot.

the basis of her [Type 1 diabetes]."[45] Petitioner argues that § 504 of the Rehabilitation Act requires the Government to "make reasonable accommodation for [Petitioner's] disabilities in connection with her immigration proceedings."[46] While Petitioner ultimately seeks release, any remedy short of that would necessarily involve changes to Petitioner's conditions of confinement. Therefore, Petitioner's claims pursuant to the Rehabilitation Act are plainly based on inadequate conditions of confinement.

In response, the Government argues that Petitioner's claims regarding her conditions of confinement are not properly brought under habeas.[47]

     a.  <u>Conditions of Confinement and Habeas</u>

Habeas review is limited to the cause of detention. *Pierre*, 525 F.2d at 935–36. The sole function of habeas is "to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Id*. The Fifth Circuit has explained that a "habeas petition is the proper vehicle to seek release from custody, while a civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner or under *Bivens*[48] for a federal prisoner is the proper vehicle to attack unconstitutional conditions of confinement and prison procedures." *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020). This applies to aliens held in immigration detention. *Nogales v. Dep't of Homeland Sec.*, No. 21-10236, 2022 WL 851738 (5th Cir. Mar. 22, 2022). Claims improperly brought under habeas should be dismissed for lack of jurisdiction. *Lee v. Gonzales*, 410 F.3d 778, 785 (5th Cir. 2005).

While Petitioner ultimately seeks release from detention, the underlying basis for her claims stem from lack of medical care and failure to accommodate her Type 1 diabetes—not the

---

[45] Pet. 21, ECF No. 1.
[46] *Id.*
[47] Resp. 8, 30–33, ECF No. 11.
[48] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

legality of her confinement. "A demand for release does not convert a conditions-of-confinement claim into a proper habeas request." *Beltran v. Wolf*, 473 F. Supp. 3d 688, 691 (N.D. Tex. 2020). And based on the record before the Court, Petitioner has not shown that release is the *only* remedy for her claims. So, if Petitioner were to succeed on her claims, the remedy is not release from confinement but changes to Petitioner's conditions of confinement. *See Francois*, 509 F. Supp. 3d at 675. The "bright-line rule" the Circuit has "adopted is that if a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit." *Melot*, 970 F.3d at 599. Because a favorable determination in Petitioner's favor would not entitle her to release, her Due Process Conditions of Confinement and Rehabilitation Act claims are not properly brought under habeas. Accordingly, the Court does not have jurisdiction over these claims.[49]

But even if the Court had habeas jurisdiction under the facts presented here to evaluate these claims, as noted above, Petitioner has not shown that the only remedy for her claims is release. And the only remedy available under habeas is release. *Wilson v. Midland Cnty., Tex.*, 116 F.4th 384, 389 n.1 (5th Cir. 2024) ("The singular habeas remedy of release is a powerful one . . . ."). Therefore, Petitioner's claims would still fail.

---

[49] Because the Court does not reach the merits of Petitioner's claim, it does not evaluate the due process factors laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). And while it is not clear that the *Matthews* factors apply here, in applying the *Matthews* factors the Court would likely reach the same result given Petitioner's untapped administrative remedies and the government's interest in detention. *See W.M.M. v. Trump*, 154 F.4th 207, 298 (5th Cir. 2025) (Oldham, J., dissenting) ("Where the Court *has* applied *Mathews* balancing to removal proceedings . . . it has urged that we must "weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.") (emphasis in original) (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)), reh'g en banc granted, opinion vacated, 154 F.4th 319 (5th Cir. 2025); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (finding that the *Matthews* factors weighed against release from detention under § 1226(a) because of sufficient procedural safeguards and the government's strong interest in immigration enforcement).

b. <u>Exhaustion</u>

Even if the Court had jurisdiction to decide these claims, Petitioner would still need to show that she has exhausted her administrative remedies. As discussed above, before seeking relief under habeas, exhaustion is generally required unless excused. *See supra* Part C.

ICE's 2025 National Detention Standards ("NDS"), cited by Petitioner, require detention facilities to "establish a process to review formal complaints and a reasonable time limit for processing, investigating, and responding to grievances and providing written responses to detainees who filed formal grievances, including the basis for the decision."[50]

The NDS also requires facilities to implement an emergency grievance process and an appeals process.[51] In the record before the Court, there is no indication that Petitioner has attempted to exhaust her administrative remedies by submitting a grievance in accordance with the NDS. There is also nothing in the record suggesting that following the grievance procedure would be futile. Indeed, it appears Petitioner has resolved her overcrowding complaint administratively.[52] While not directly analogous, when a prisoner seeks redress for a conditions of confinement claim, the Fifth Circuit generally requires the prisoner to exhaust administrative remedies. *See Schipke v. Van Buren*, 239 F. App'x 85 (5th Cir. 2007). Because the NDS establishes a grievance procedure for Petitioner's claims, in line with the Circuit's practice, Petitioner must exhaust her administrative remedies or adequately show how exhaustion would be futile.

c. <u>Merits of Rehabilitation Act Claim</u>

While the Court does not have jurisdiction to decide Petitioner's Rehabilitation Act claim, if it did, Petitioner's claim faces several additional hurdles beyond failure to exhaust. First,

---

[50] Immigration and Customs Enforcement, Detention Standards 182–84 (2025) https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf.
[51] *Id.* at 183.
[52] *See supra* note 40.

"[c]ourts have precluded federal detainees from bringing Rehabilitation Act claims against the federal agencies housing them." *See Acha v. Wolf*, No. CV 20-1696, 2021 WL 537101, at *7 (W.D. La. Jan. 28, 2021), *report and recommendation adopted*, No. CV 20-1696, 2021 WL 536243 (W.D. La. Feb. 12, 2021) (collecting cases). Second, Petitioner has not alleged a cognizable claim.

To establish a prima facie claim under the Rehabilitation Act, a petitioner must show: "(1) that he is a qualified individual . . .; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). Petitioner has not pled how she is being excluded from participation in, or being denied benefits of, any services, programs, or activities or that her denial of benefits or discrimination is because of her Type 1 diabetes. Accordingly, she has not pled a cognizable claim.

### D.  Administrative Procedure Act Claim

Finally, Petitioner asserts that a July 8, 2025, memorandum from the Director of ICE regarding detention authority for applicants for admission ("ICE Memo") violates the Administrative Procedure Act ("APA") because it is a final rule issued without notice and comment as required by 5 U.S.C. § 553(c).[53] Petitioner seeks declaratory relief that the Government's actions taken pursuant to the ICE Memo to arrest and detain Petitioner violate the APA.[54] The Government demurrers that Petitioner's claim cannot proceed under the plain

---

[53] Pet. 19, ECF No. 1; *see also ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).
[54] *Id.* at 21.

language of 5 U.S.C. § 704 because Petitioner has an adequate remedy through habeas.[55] The Government is right, but Petitioner's claim fails for at least two reasons.

First, nothing in the record before the Court indicates that Petitioner was detained because of the ICE Memo as opposed to the Government's plain statutory authority under 8 U.S.C. § 1225(b)(2)(A). Accordingly, Petitioner does not have standing to bring her APA claim. *See Nat'l Credit Union Admin. v. First Nat. Bank & Tr. Co.*, 522 U.S. 479, 488 (1998).

Second, even if Petitioner had standing to bring her APA claim, the Supreme Court has held that where an alien detainee's claims "necessarily imply the invalidity of their confinement" these claims must be brought in habeas. *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025). Petitioner here seeks declaratory relief that the Government's actions to arrest and detain her violate the APA, which necessarily implies a challenge to the validity of her confinement. Thus, any challenge to the validity of Petitioner's confinement must be brought in habeas and cannot be brought under § 704.

For these reasons, the Court finds that Petitioner's APA claim fails.

### E.  Temporary Restraining Order

Petitioner seeks "a temporary restraining order to compel her immediate release from detention, or alternatively, prohibiting her transfer from Prairieland pending the Court's ruling on her habeas petition."[56] However, because the Court has denied Petitioner's Petition for Writ of Habeas Corpus and found that none of her other claims are viable, she cannot demonstrate a substantial likelihood of success on the merits. Accordingly, the Court **DENIES** Petitioner's Motion for Temporary Restraining Order.

---

[55] Resp. 9–10, ECF No. 11.
[56] Br. Supp. TRO 2, ECF No. 3.

## IV.    CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus is **DENIED**. Because the Court finds that Petitioner's other claims are not viable, and therefore she cannot demonstrate a substantial likelihood of success on the merits, Petitioner's Motion for Temporary Restraining Order is **DENIED**. Petitioner's Motion to Proceed Under Initials is **GRANTED**.

**SO ORDERED** on this **13th day** of **December, 2025**.


Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**